# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN MICHIGAN

SYDNEY HORN and
PAIGE VANVALKENBURG,

    Plaintiff,

v.

UNITED LAWNSCAPE, LLC.

    Defendant.

Case No:

Hon.

---

SCOTT P. BATEY (P54711)
Batey Law Firm, PLLC
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI  48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COME, Plaintiffs, SYDNEY HORN and PAIGE VANVALKENBURG, by and through their attorneys Scott P. Batey and the Batey Law Firm, PLLC, and for their Complaint against Defendant states as follows:

1.    Plaintiff, Sydney Horn, is a resident of the Township of Shelby, County of Macomb and State of Michigan.

2. Plaintiff, Paige Vanvalkenburg, is a resident of the City of Lake Orion, County of Oakland and State of Michigan.

3. Defendant, United Lawnscape, LLC. (hereinafter "United") is a domestic profit corporation whose resident agent is The Corporation Company, and whose registered office address is 40600 Ann Arbor Rd. E. Ste. 201, Plymouth, MI 48170.

4. The events producing the original injury occurred in the County of Macomb, State of Michigan, and jurisdiction and venue are proper in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) & (c).

5. Plaintiffs bring this action for damages arising out of the acts and/or omissions of Defendant constituting unlawful discrimination/harassment consisting of sexual harassment and retaliation in violation of Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*. ("ELCRA") which resulted in emotional and economic damages to Plaintiffs.

## **GENERAL ALLEGATIONS**

6. Plaintiffs incorporate by reference paragraphs 1 through 5 of the Complaint as though fully set forth herein.

7. Plaintiff Paige Vanvalkenburg is a female who began her employment with United on or about August of 2016, as Personal Assistant to Jim Carabelli.

8. At all times relevant, Carabelli was a member of upper management of Defendant, United, with the ability to hire, fire, and discipline, and who was Plaintiffs' immediate supervisor.

9. In this capacity, Vanvalkenburg was repeatedly sexually harassed and sexually assaulted by Carabelli.

10. Almost immediately upon Vanvalkenburg starting as Carabelli's personal assistant, he began to ask her questions based on her sex, like what type of bra she was wearing, and if he could see it.

11. Along with asking Vanvalkenburg what type of bra she was wearing, Carabelli would place his hands on her breasts to adjust them in her bra, in what he described as an attempt to make her " cleavage look better." This included direct skin-to-skin contact.

12. On numerous occasions Carabelli would summon Vanvalkenburg to his office, close and lock the door, and whisper while harassing or touching her, despite her repeated objections.

13. During these incidents, and additionally in more public settings, Carabelli would ask Vanvalkenburg about the details of her sexual experiences and sexual history, as well as asking her if she would engage in certain sexual acts;

including oral sex, anal sex, public sex, threesomes, and other such acts.

14. Vanvalkenburg continuously requested that Carabelli not speak to her in this fashion, and tried to refuse to answer these sexually offensive questions.

15. As part of her job, Vanvalkenburg was often required to travel with Carabelli to meet with clients. Carabelli would frequently adjust her breasts/bra to make her, in his words, "look better" for United's clients.

16. On one particular occasion, Carabelli pulled over onto a dirt road and forced Vanvalkenburg to lift her shirt, exposing herself, despite her protests.

17. Throughout these interactions Carabelli continued to make sexually explicit remarks and inquiries to Vanvalkenburg, despite her repeated requests that he not do so.

18. On certain occasions Vanvalkenburg and Carabelli would arrive to a client meeting ahead of schedule, whereupon he would insist on driving her to a nearby store, such as Marshalls or T.J. Maxx, and demand that she try on clothing/bras he selected. During these incidents Carabelli would force or attempt to force his way into Vanvalkenburg's fitting room, despite her explicit objections. On one occasion, the Fitting Room Attendant instructed Carabelli he was not to enter.

19. In or about April of 2019, Vanvalkenburg was promoted from her position as Carabelli's Personal Assistant, and was replaced by another woman,

Plaintiff, Sydney Horn.

20. As with Vanvalkenburg, almost immediately upon beginning work as Carabelli's Personal Assistant, Horn was subjected to sexual harassment and assaulted by Carabelli.

21. Carabelli would often touch Horn's legs, ask her about her sexual experiences and history, including what sexual acts she would perform, ask her about her bra, try to touch and adjust her bra, touch her back, and otherwise make unwanted physical contact and sexual remarks and inquiries, despite Horn's repeated objections.

22. On numerous occasions Carabelli demanded that Horn provide him her phone so he could go through her photos, to which she objected on the grounds that certain photos would be inappropriate. This only caused Carabelli to demand more forcefully that she turn her phone over to him, until he learned that the "inappropriate" photos, Defendant, Horn referenced were of her in a bikini.

23. After attempting to hide or delete photos which Horn especially wished to conceal from Carabelli, she finally relented. Not having found any nude photos in her phone's gallery, Carabelli became very angry with Horn.

24. On one occasion Carabelli instructed Horn to stand and face him, whereupon he proceeded to trace the waistband of Horn's panties with his fingers and continued to pull the waistband away for her body so he could look down

them. Horn begged him to stop and not look at her genitals as she feared he was going to forcibly expose her.

25. On at least one occasion Carabelli did in fact expose plaintiff, when he lifted her shirt and exposed her breasts.

26. Despite Horn informing Carabelli that his advances were unwelcome and she was uncomfortable with his behavior, Carabelli continued to pressure Horn to engage in sexual acts with him, informing her that his wife would not care.

27. Prior to meeting with a disgruntled client, Carabelli demanded that Horn accompany him and lower her shirt, so as to placated the client.

28. At one point, Carabelli adjusted Horn's vacation schedule on her behalf, and then winked at her, stating that she now owed him a sexual favor in return.

29. On more than one occasion, Carabelli asked one or both Plaintiffs if they, "spit or swallow, do/have done anal, do/have done car sex, have public sex, or participate(d) in threesomes," among other such inquiries and requests.

30. Carabelli requested of both Plaintiffs that they perform oral sex on him, stating specifically, "Give me head," or, "Suck my dick."

31. On numerous occasions throughout their employment with Defendant, Carabelli would attempt to intimidate Plaintiffs with comments about and acts of violence.

32. Carabelli bragged to Plaintiffs on separate occasions about an incident where he had anal sex with a woman in a car where he pushed her face into the car seat, telling Plaintiffs he thought she was screaming in ecstasy, but when he finished he realized she had been screaming for him to stop giving both Plaintiffs the impression that he had raped the woman.

33. On another occasion Carabelli violently threw a pen at a co-worker in the presence of Plaintiff Vanvalkenberg and when the co-worker asked Plaintiff to sign a statement she declined explaining she was too "scared of Jim."

34. On or about September 18, 2019, Plaintiffs Vanvalkenburg and Horn complained to United's Vice President, Steve Young.

35. Young's response to Plaintiffs' complaints was to become angry, and to downplay and justify Carabelli's behavior.

36. Despite Plaintiffs' appeal to Young for intervention, Defendant refused to respond to Plaintiffs' Complained or provide them with reasonable remedial measures to guard against continued sex harassment or retaliation, instead only responding "I'll get back to you."

37. Plaintiff Vanvalkenburg was placed on medical leave due to the stress of the harassment and assault, which caused her to experience severe symptoms of depression and anxiety.

38. Plaintiff Horn resolved to resign due to discomfort, and fear of

continued assault and harassment.

39. When Horn informed Young of her intent to resign, he offered to assign her a different position. She then asked Young how he could ensure the sexual harassment and assault would stop in the new position. He informed her that he did not know how to answer that question. As a result, Horn proceeded with her resignation.

40. Horn's resignation amounts to a constructive discharge, as a direct result of the hostile work environment created by Defendant and its agent(s) or employee(s).

41. After being off work for a period of time, Plaintiffs were reassured by Defendant that the harassment would stop and Plaintiffs returned to work.

42. Immediately upon their return, Horn and Vanvalkenburg encountered hostility, anger, and retaliation from co-workers and management.

43. A male co-worker, Jim Rini, stood outside of Plaintiff, Horn's office in the doorway and said loud enough for the entire office to hear "is somebody going to get me in trouble for sexual harassment."

44. Horn and Vanvalkenburg's new supervisor, Laura, referred to them as "bitches," for having complained about Carabelli.

45. Horn and Vanvalkenburg again approached Young, informing him their new supervisor was referring to them as bitches.

46. Throughout Plaintiffs' employment with Defendant, Defendant knew or had reason to know that Carabelli was sexually harassing them and were told by at least one co-worker that there were "red-flags all over the place."

47. On or about November 13, 2019, Plaintiffs filed a formal complaint with the EEOC.

48. Young responded exasperatedly that he was stressed and might quit, and asked them to "please try" and make do and accept the continued retaliation.

49. As a result of Defendant's refusal to take any corrective action, Plaintiffs were forced to leave their employment at United on January 22, 2020.

50. Plaintiffs were constructively discharged, having been forced to resign their positions as a result of continued sexual harassment, sexual assault, retaliation for having reported same, and Defendant's creation (including through its agent(s) and/or employee(s) of a hostile work environment.

51. But for Defendant's creation and maintenance of a hostile work environment, Plaintiffs would not have resigned their positions.

52. Defendant's actions were intentional, or were carried out with reckless indifference to Plaintiff's rights.

53. On December 17, 2020 the EEOC issued a Right-to-Sue letter to Plaintiff, Vanvalkenburg for Charge Number 471-2020-00217 and a Right-to-Sue letter to Plaintiff, Horn for Charge Number 471-2020-00418.

## COUNT I
## SEXUAL HARASSMENT/DISCRIMINAITON IN VIOLATION OF TITLE VII AND ELCRA - HOSTILE WORK ENVIRONMENT

54. Plaintiffs incorporate by reference paragraphs 1 through 53 of the Complaint as though fully set forth herein.

55. Pursuant to Title VII of Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, et seq. ("ELCRA") Plaintiffs are guaranteed the right to be free from discriminatory treatment and harassment from their employer and/or supervisors on the basis of their sex.

56. At all times relevant, Carabellli was Plaintiffs' immediate supervisor with the ability to hire, fire, and discipline, as well as effectuate change and stop the sexual harassment.

57. At all times relevant, Defendant created a hostile work environment for Plaintiffs as a result of Plaintiffs' sex, and due to their status as a female, Defendants' employee(s) began to sexually harass and assault Plaintiffs.

58. Defendant failed to take remedial action after they reported the numerous incidents of sexual harassment and assault, and retaliation against them for their reports by berating and otherwise mistreating them.

59. Defendant had the knowledge that Plaintiffs were being sexually harassed, assaulted, and retaliated against, as well as the ability to take remedial measures to stop the sexual harassment and assault, but failed/refused to do so.

60. Defendant was Plaintiffs' employer within the meanings of Title VII and the ELCRA.

61. Plaintiffs have been subjected to repeated and continuous sexual harassment, assault, discriminatory treatment, and retaliation based upon their sex by Defendant, its employees and agents to the point where their status as an employee has been detrimentally affected.

62. Defendant and its agents, employees and representatives, breached and violated their duty to Plaintiffs by reason of the following acts and/or omissions:

    a. Violating the laws against discrimination by engaging in sexual harassment in the workplace;

    b. Retaliating against employees who make complaints of discrimination and harassment; and

    c. Failing to take serious and corrective action when informed by Plaintiffs that the conduct towards them was unlawful.

63. Defendant owed Plaintiffs as female employees, a duty to adequately advise their employees to refrain from discriminating against employees.

64. Defendant breached and violated its duty owed to Plaintiffs, by reason of the following acts and/or omissions:

    a. Failing to prevent or stop sexual harassment against Plaintiffs causing a hostile work environment;

    b. Taking adverse employment action against Plaintiffs due to their sex; and

    c.   Retaliating against Plaintiffs for their complaints of sexual harassment.

65. As a direct and proximate result of the actions of Defendant, Plaintiffs were the subjects of discriminatory conduct on the part of the Defendant.

66. Plaintiffs are entitled to punitive, exemplary, and compensatory damages pursuant to Title VII and the ELCRA as a result of each and every violation of the act, including costs and reasonable attorney's fees.

67. Because of the unlawful conduct of Defendant and its agents and employees, and as a direct and proximate cause of such conduct, Plaintiffs have suffered damages, including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendants in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

## COUNT II
## RETALIATION IN VIOLATION OF THE MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT AND TITLE VII

68. Plaintiffs incorporate by reference paragraphs 1 through 67 of the Complaint as though fully set forth herein.

69. Pursuant to Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, et seq., and Title VII, Plaintiffs are guaranteed the right to be free from discriminatory treatment and harassment from their employer and/or supervisors on the basis of their sex.

70. Plaintiffs were sexually harassed by their immediate supervisor.

71. Defendant created a hostile work environment for Plaintiffs as a result of Defendant's continuous comments, remarks, and conduct based on sex and Plaintiffs' sex.

72. Plaintiffs engaged in a protected act under Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, et seq., by complaining of sexual harassment.

73. As a result of Plaintiffs' protected activity, they were retaliated against by Defendant, including Defendant's employees, agents, and supervisors.

74. As a result of engaging in a protected activity, Plaintiffs were subjected to hostile and offensive conduct by co-workers and when they complained to Defendant, United, no remedial actions were taken.

75. Defendant owed Plaintiffs as female employees, a duty to adequately advise their employees to refrain from discriminating and retaliating against employees.

76. Defendant owed Plaintiffs a duty to not retaliate against them for

making complaints of sexual harassment and assault.

77.     As a direct and proximate result of the actions of Defendant, Plaintiffs were the subject of discriminatory conduct and retaliation.

78.     Because of the unlawful conduct of Defendant and its agents and employees, and as a direct and proximate cause of such conduct, Plaintiffs have suffered damages, including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

                    Respectfully submitted,

                    **BATEY LAW FIRM, P.L.L.C.**

                    BY: /s/Scott P. Batey
                         SCOTT P. BATEY (P54711)
                         Attorney for Plaintiff
                         30200 Telegraph Road, Suite 400
                         Bingham Farms, MI  48025
                         (248) 540-6800
                         sbatey@bateylaw.com

Dated:  February 3, 2021

## **DEMAND FOR JURY TRIAL**

NOW COME Plaintiffs, Sydney Horn and Paige Vanvalkenburg, by and through their attorneys, Scott P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all issued allowed by law.

                                  Respectfully submitted,

                                  **BATEY LAW FIRM, P.L.L.C.**

                        BY: /s/Scott P. Batey
                              SCOTT P. BATEY (P54711)
                              Attorney for Plaintiff
                              30200 Telegraph Road, Suite 400
                              Bingham Farms, MI  48025
                              (248) 540-6800
                              sbatey@bateylaw.com

Dated:  February 3, 2021